Mr. Court, please. Manuel Hernandez from Danville, Oregon. I represent Robert Dark, the employee in this matter. Mr. Dark was a 17-year employee who had a history of epileptic seizures since he was 15 or 16 years old. When he applied for his position with the county, he disclosed he had a history of seizure disorders. And for 17 years, he had good evaluations as an employee. He never had any warnings. And I think this is the most significant part of the job. He cited six other employees with no disabilities who had similar incidents, accidents at work with no reprimand, no adverse employment action. And in his case, Mr. Dark gets, he has the benefit of having an aura. Some epileptic people have an aura that warns them, you may have a seizure today. And the evidence is about half of the time Mr. Dark would have a seizure, about half the time he wouldn't. He is a certified diver, which controls these seizures and to do things that would otherwise be dangerous even though he has an epileptic condition. Counsel, the day the accident occurred, he did have an aura, did he not? He did. And yet he chose to go ahead and work. Yes. He traded jobs. He took himself off the roller. He traded with the flagger. Everybody on his crew knew due to safety meetings that he had an epileptic condition. And so he took himself off the heavy equipment and was flagging that day. At the break time, the job had progressed up about 100 yards up the road. And after the break, himself and another fellow moved the pickup up the road. They were just going 100 yards. They weren't going highway speeds. They just moved it up the road a little ways. When the seizure occurred, the passenger merely put the vehicle in park to stop the vehicle. There was no property damage. So rather than make reasonable accommodations, the employer, first of all, there was no duty to report this incident to motor vehicles. But the road supervisor did report it. And that caused him to lose his CDL for a period of time. How do you distinguish this case from the Hutton case where we affirm summary judgment because the plaintiff posed a direct threat? Well, whether or not an employee poses a direct threat in the facts in this case is a factual question to be decided not in summary judgment because of the long-term history. I submit you will not find another case where a long-term employee has been doing the job for so long and been getting good evaluations that is summarily discharged for one event that no question it's related to his disability. Counsel, what struck me about this case was it appeared to have been tried not as an ADA case but as a wrongful termination case. Can you help us sort out how this happened? Well, there was no trial. Part of the problem was that when it came time for plaintiff to respond to defendant's motion for summary judgment, we put our package in the mail. We didn't take it to the counter. In Bandon, our post office closes at 430. We should have got it to the counter by 430. But we had to mail it that day. We didn't know that the regulations had changed since 9-11. You can no longer drop a package in the mail and have it go out the next day if it weighs over a pound. So this package of our response would eventually return back to our office. And the magistrate, having not received our response, did his findings and recommendation based on the fact that there was no response filed, which is why he states in his findings and recommendation that certain facts are undisputed. I don't know if that answers your question. I didn't see that we had... Well, let me ask it in a totally different way. Suppose all there was was evidence of the aura yet Mr. Dark continuing to drive the vehicle, and that was it. Could the county not have terminated Mr. Dark specifically for failure to control that situation, failure to take himself off the vehicle knowing that there was a risk of an event? They could if they treated everybody the same way. They can't single him out because he has a disability to treat him differently. As I say, in the record there's evidence of six other employees who had more serious accidents and not even any disciplinary action, which was a motivation for this termination. As a matter of fact, the insurance company from the county is the one that required that this employee be sent for a fitness to work evaluation. And to make it worse, the county didn't try to accommodate him. Rather, what they did, they had county council send a misleading three-page letter to Dr. Melson before Dr. Melson saw him that said Mr. Dark had had a previous accident in June of 2001 and he drove the vehicle off the road. Now, that was not a true statement. He had an accident June 14, 2001. But it was not because he had a seizure and drove off the road. Rather, the evidence is that he drove off the road and it was just an accident. And in the course of going down a very steep hill, he did have a seizure either going down the hill or when they had an impact on the tree. After the accident, he was having a seizure. But again, it raises the question of fact. What are the facts here? Not to predispose the independent medical examiner to say, by the way, he's already had one serious accident and this is a second time. Thank you. Mr. Hernandez, did your opposition eventually get filed before the district court ruled on the magistrate judge's report and recommendation? By the time we filed, he had already, by the time we got it to him, he didn't consider it.  Yes. And that's when we filed the motion for reconsideration at Judge Aiken on, I don't know if it was on reconsideration or during the objection period. She accepted our filings and considered them, but yet affirmed the magistrate's findings and recommendations. So in addition, we have the fact that two treating physicians for the employee released Mr. Dark to return to work. So that's contrary to Dr. Melson's fitness to work evaluation. And more importantly, we meet the criteria under Hutton for establishing a prima facie case. We have a disabled person under the act. We have an adverse employment action. And we have a causal connection between the disability and the adverse action. Under Hutton, that establishes a prima facie case, which then shifts the burden to the employer to produce non-discriminatory and legitimate justification for the discharge. Now, what did Magistrate Cooney, I believe, do with that? How did he address the question of the prima facie case? He never got to that point because he viewed the record as ignoring what we submitted later. If you'll look at his findings and recommendation, he makes findings that say the facts are undisputed. And they were undisputed if he didn't consider our filing. So he never really got to accommodation, for example? No, no. And here, the employer tried to make it seem like you need your commercial driver's license to do this work. But we submitted evidence that under motor vehicle rules, you do not need a CDL to operate heavy equipment on the job. The only reason you need a CDL is to transport heavy equipment to the job. And Mr. Dart says that only encompassed 2 to 3% of his job time was actually having to have a CDL. He had 89 days of accumulated sick leave. And he had, I think, 3 weeks of sick leave and 89 days of vacation time. At the most, he was out of a CDL for 40 days. And not only did the county not ever try to accommodate him, they wouldn't even discuss accommodation. There were so many things they could have done. Flagging positions opened up. They could have put him in the flagger. They had openings in the data entry department with the county. They had other positions where they could have put him in. And they did nothing. Counsel, why don't you reserve the remainder of your time, unless there's something else you... Let's hear from the county. May it please the court, Jason Montgomery on behalf of the defendants. I thought I'd just address a couple of the issues that came up a moment ago. Well, Mr. Montgomery, I think you probably heard my colloquy with Mr. Hernandez. What troubles me about the way in which this case was approached was it was really looked at by the magistrate judge as a wrongful termination case without any attention to some of the concerns that are specifically laid out in the ADA. Qualification, that sort of thing, which then trigger the shift of the burden to establish that accommodation could not have been a resolution. So help us with that. This is an ADA case, is it not? Yes. It was brought under the ADA. Yes. All right. Go ahead. I just looked at Hutton again, the three elements listed there, and one of them is suffered an adverse employment action because of his disability. Isn't that exactly what happened here? No. Why not? I think if you look at the board of commissioners' decision, their decision was solely a misconduct decision. But that was two months. It was not cited as a reason for his termination until the board of commissioners issued its opinion in June of 2000, more than two months after Dark was actually terminated. And I think the board of commissioners, I mean, this is a review process, and they're entitled to come to a different decision. And, you know, if we look through this process as it goes along, we get Mr. Dark's testimony as the process continues, and we learn not only was there an accident and was there a seizure, we learn that he's admitting that he knew he had an aura, and he knew, and he drove. He drove with that knowledge. And I think the board of commissioners, there's no evidence that the board of commissioners came to this decision on pretext. Well, see, that's what troubles me. If that's all that had been said, then perhaps the board might have properly terminated for cause. But that's not what they said. They went into all of this analysis of the disability, the medical issues, and that sort of thing, which is exactly what But, you know, I think you also have to look at it from the perspective of, well, first of all, basically there's only one reason for the decision. But let's assume there are independent decisions. One is an analysis that this is a situation where he's a direct threat, or this is a situation where no accommodation is available or can be given. And then there's an independent judgment that there was misconduct. If we take the misconduct wrong, we get the question of, does an employer have an obligation under the ADA to retain an employee who knowingly endangers the lives of his co-employees, who steps into a vehicle having had an aura, knowing he could have a seizure? I don't think there's any case law out there that's going to say the ADA requires an employer to retain such an employee that they have no right to terminate an employee. But you have to go through the process, do you not? Such as you've indicated in Hutton, the three steps. And at that point, if qualified and disability, then you have to reach the issue of accommodation, do you not? Yeah. I guess our position is if we take that third prong and we look at it and we look at the Board of Commissioners' decision, I don't think there's an issue of fact for the jury. I think the Board of Commissioners made their decision. They set forth the reasons for it. And I think the law supports our position that an employer can't terminate an employee. Now, those weren't the only reasons given. Judge Nelson asked you earlier if Mr. Dark had gotten a letter from Crumley first. And the Crumley letter was quite different in the reasons cited from what the commissioners ultimately cited two months later. Now, the plaintiff takes the position that it was the Crumley letter that triggered the firing. And that letter doesn't speak to misconduct or termination for cause. Do you concede that? I agree that the crux of Crumley's decision was along the disability and accommodation route. There is some reference in Crumley's letter to misconduct, although I'll agree it's definitely not the emphasis. But isn't that the triggering event? Mr. Crumley's letter is actually the document that fired Mr. Dark. And then he sought an appeal with the Board of Commissioners, and they cited different reasons. But it's the Crumley letter that ought to be our focus, isn't it? Well, I think the termination is the final decision by the county is made by the Board of Commissioners. I guess that would be a – I'd have to get back into the local ordinances and try to specify the authority for that, and I don't have any right here. But the final decision on the issue is made by the Board of Commissioners, and that's my position. What was the termination date, though? Was it the date that Mr. Dark received Mr. Crumley's letter, or was it two months later? Let's see if I can. I think it's April 17, 2002, if my records are correct. Yeah, he was notified of his termination by Roadmaster Crumley on April 17, 2002. Which is two months before the Board acted. Correct. And so the termination date is April 17 or sometime later? I think that is the date at which he's notified of his termination. I think the termination decision becomes final when the Board of Commissioners makes its ruling. And I guess, you know, if we're going into the ADA aspects and we get apart from the misconduct analysis, there's also the question of the plaintiff's burden of showing that there was some accommodation possible. I mean, that's once we've stepped beyond the private fascia case and we've offered our legitimate non-discriminatory reason. And I don't think there's any record here for the Court to consider on that. Well, we heard something today about unused sick leave and vacation leave. Right away, that adds up to a considerable amount of time, does it not? Yes, it does. I think the duration of time, though, that would have been required in that we were requesting the case law wouldn't have required us for that duration of time. Then what about other positions like flagger and other positions? Well, you know, our position on that, with the flagger position, he's still going to be around heavy equipment. And there's still the same danger. If he was to have a seizure near heavy equipment, there could be injury. If he's a flagger? Yes. And, you know, I can't remember if I had a case on that as well. Flaggers don't operate heavy equipment. They operate near heavy equipment. That was the nature of his position. He would have been near heavy equipment. And, you know, we have cases in there where you have employees working with heavy equipment instead of driving it. The Hutton case is somewhat similar in that respect. If you're near heavy equipment, that is undisputed in the record. There's no dispute of fact that in the flagger position he would have been near heavy equipment and he would have been in danger. But there was no individualized assessment of his situation as there was in Hutton. There was no interactive process where all of this was explored with him or reasonable accommodation explored. Isn't that true? He was just fired. Well, I think there was a hearing process and he was given the opportunity to testify. The roadmaster made findings. He considered the case. They had a medical evaluation done. I think they did go through a process there to determine what the best route possible was. But in terms of accommodation, no one looked specifically at that and said, well, maybe not a flagging position, maybe not heavy equipment operator, but Mr. Nett has mentioned today data entry, some other position with the county. That process didn't occur in Mr. Dark's case, did it? Well, and I think I'd rely on the case over there in that we're dealing with this record here and it's the plaintiff's burden to show that there were other positions available which he could have done. It's his burden to show that. And there is no showing in this case. There is a loose reference to six positions being available after he was terminated, but we don't even have a duration of time as to when those positions were open. And, you know, another one of the legal principles I cite in my brief is that an employer is not required to create a new position to accommodate a disabled individual. If there is a position in which they can fit them and we are in the accommodation realm, they should accommodate him. Was there enough to raise an issue of fact that should have been tried on that? I don't think there was. I think in order to do that, he would have had to show a specific job that was available that he could perform. He has, under Hutton, the first three elements, the burden of showing he's qualified. He has to show that there's a job and that he is qualified for it, and that's there. And he has not done that. I don't think there's an issue of that. What's your observation on Mr. Hernandez's point about the materials that were mailed and returned and then redelivered later? I'm not sure. Are you talking about as far as the late mailing of the summary judgment? Well, the fact that they were not addressed by the magistrate judge. My only comment to that is Mr. Hernandez was correct as far as what happened with Judge Cooney. Judge Aiken did indicate in her decision on the findings and recommendations that she had reviewed and considered all information. So the decision by the district court judge to reviewing the magistrate judge's ruling, I think if you look at the record, it will indicate that all materials were considered by the district court judge. Including the materials in this envelope that arrived later. Yes. I think that's clearly set forth in what I think it was Judge Aiken's decision. Anything further, counsel? No, I don't have anything further. Thank you, counsel. Mr. Hernandez, you have some reserved time. Well, I think if Mr. Dark was a new employee, perhaps the employer's approach may be well-founded. But here you have an employee with 17 years of doing the job. And so how can you suddenly say after years of evaluation that all of a sudden he is not qualified to do the job? That just doesn't fit with the facts in this case. The fact of the matter is he had been a good employee for so many years. And, you know, he was probably 52 years old at the time that he was terminated. So clearly there was never a problem before that's been documented in this record. All of a sudden it turns from a work-related termination or disability-related termination to misconduct. And I think that was on advice of counsel that recognizing there was going to be difficulties in trying to just terminate Mr. Dark without even a warning. We can distinguish the Sifkin case that the defendants raised where the employee was asking for a second chance. Here we're asking for a first chance. You know, give this guy a warning before you terminate him, especially where there was no serious injury or any property damage. Mr. Hernandez, in the packet of information that you submitted to Judge Aiken after the report and recommendation issued, did you discuss the possibility of other positions that Mr. Dark might be able to fill as an accommodation? Yes. It was in Mr. Dark's affidavit that was submitted in response to the motion for summary judgment. He listed these other ones because we're coming upon summertime, and every summer they hire temporary work, temporary people. So that was in the response to summary judgment. And that's in the record, of course? Yes, it is. In the Dark affidavit? Yes. And also in my affidavit, I believe. But I believe the reference to the other positions were in Mr. Dark's affidavit. Anything further, Mr. Hernandez? No, sir. Thank you. If not, the case just argued will be submitted for decision.
judges: D.W. Nelson, O'scannlain, Burns